UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JENNA M. DiMARTILE; JUSTIN G. CRAWFORD;
PAMELLA GIGLIA; JOE DUROLEK; and
DAVID SHAMENDA,

                Plaintiffs,

v.                                                          1:20-CV-0859
                                                            (GTS/CFH)
ANDREW M. CUOMO; LETITIA JAMES; MARK
POLONCARZ; EMPIRE STATE DEVELOPMENT
CORP.; and ERIE COUNTY DEPARTMENT OF
HEALTH,

                Defendants.
_____

APPEARANCES:                                                OF COUNSEL:

RUPP BAASE PFALZGRAF & CUNNINGHAM LLC                        PHILLIP A. OSWALD, ESQ.
  Counsel for Plaintiffs                                    R. ANTHONY RUPP, III, ESQ.
424 Main Street
1600 Liberty Building
Buffalo, NY 14202-3616

HON. LETITIA A. JAMES                                       DENISE P. BUCKLEY, ESQ.
Attorney General for New York                               Assistant Attorney General
  Counsel for State Defendants
The Capitol
Albany, NY 12224

HON. MICHAEL A. SIRAGUSA                                    MICHELLE PARKER, ESQ.
Erie County Attorney                                        First Assistant County Attorney
  Counsel for County Defendants
95 Franklin Street, Suite 1634
Buffalo, NY 14202

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

1

Currently before the Court, in this civil rights action filed by Jenna M. DiMartile, Justin G. Crawford, Pamella Giglia, Joe Durolek, and David Shamenda ("Plaintiffs") against Andrew M. Cuomo, Letitia James, and Empire State Development Corporation ("State Defendants"), and Mark Poloncarz and Erie County Department of Health ("County Defendants"), are the following motions: (1) Plaintiffs' motion for a preliminary injunction enjoining Defendants from enforcing a 50-person limit on non-essential gatherings, including weddings, pursuant to Fed. R. Civ. P. 65(b); (2) the County Defendants' cross-motion to dismiss for failure to state a claim; and (3) the State Defendants' cross-motion to dismiss for failure to state a claim.  (Dkt. Nos. 4, 11, 14.)  For the reasons set forth below, Plaintiffs' motion for a preliminary injunction is granted and decision is reserved on Defendants' cross-motions to dismiss except to the extent those motions challenge the pleading sufficiency of Plaintiffs' equal protection claim, to which extent Defendants' cross-motions are denied.

## I.     RELEVANT BACKGROUND

### A.     Plaintiffs' Complaint

Generally, liberally construed, Plaintiffs' Complaint asserts the following five claims: (1) a claim that Defendants' 50-person gathering restriction violates Plaintiffs' First and Fourteenth Amendment rights of free exercise of religion by "forbidding them to preside over or participate in religious weddings according to the dictates of their conscious and religious beliefs"; (2) a claim that the 50-person gathering restriction violates their First and Fourteenth Amendment rights of freedom of speech, assembly, expression and intimate association by forbidding them to gather with their invited guests for a religious purpose; (3) a claim that the 50-person gathering restriction violates their Fourteenth Amendment rights of equal protection and substantive due process in that it treats religious conduct (i.e., weddings) differently than non-religious conduct

(including gatherings for mass demonstrations, graduation ceremonies, special education classes, and restaurant patronage); (4) a claim that Defendants have acted ultra vires in enacting the many restrictions related to COVID-19 pursuant to the Governor's emergency power, including the 50-person gathering restriction; and (5) a claim that Plaintiffs are entitled to relief pursuant to N.Y. C.P.L.R. Article 78 because Defendants' actions are arbitrary, capricious, an abuse of discretion, and a violation of lawful procedure.  (Dkt. No. 1 [Pls.' Compl.].)  Familiarity with the factual allegations supporting these claims in Plaintiffs' Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties.  (*Id.*)

### B.   Briefing on the Parties' Motions

#### 1.   Plaintiffs' Memorandum of Law on Their Motion for Preliminary Injunction

Generally, in support of their motion for a preliminary injunction, Plaintiffs assert two main arguments.  (Dkt. No. 4, Attach. 1 [Pls.' Mem. of Law].)  First, Plaintiffs argue that the balance of hardships and the public interest favor granting the requested injunction because the 50-person gathering restriction is of minimal importance compared to the fact that such restriction will deprive Plaintiffs of an "irreplaceable life event" (i.e., their ability to have a wedding that allows their friends and family to participate to the full extent contemplated by their Christian faith).  (*Id.* at 8-10.)  Plaintiffs argue that Defendants' expressed interest in preventing the spread of COVID-19 is undermined by multiple facts, including (a) the fact that a wedding venue, when operating as a restaurant under Defendants' 50-percent capacity restriction, is permitted to hold more than 50 people at a time (and thus failing to allow more than 50 people when the same venue is used for a wedding is arbitrary), and (b) the fact that Defendants allow similar or more dangerous activities involving more people (such as mass

demonstrations, outdoor graduation ceremonies, and indoor special education classes without a capacity limitation). (*Id.*)

Second, Plaintiffs argue that they are likely to succeed on the merits of their claims. (*Id.* at 11-21.) More specifically, Plaintiffs argue as follows: (a) the 50-person gathering restriction violates their constitutional rights to free exercise of religion, assembly and association, and equal protection; and (b) the 50-person gathering restriction is not facially neutral or generally applicable and is not narrowly tailored to serve a compelling governmental interest or even rationally related to a governmental interest. (*Id.*)

As to the merits of their constitutional claims, Plaintiffs argue that the 50-person gathering restriction infringes on their right to have both a wedding and an intimate and expressional gathering by preventing them from having all of their invited family and friends present to witness their marriage, presentment as a married couple, and joining of their two families. (*Id.* at 12-15.) Plaintiffs also argue that the 50-person gathering restriction infringes on their equal protection rights because it allows similarly situated groups (i.e., patrons dining at the restaurant) access to the same venue with fewer restrictions, given that the venue's use as a restaurant restricts it to only 50-percent capacity (approximately 200 people), and is not consistent with Defendants' allowance of exemptions to the 50-person gathering restriction for activities such as mass demonstrations, outdoor graduation ceremonies, and indoor special education classes. (*Id.*) Plaintiffs argue that the only difference between their weddings and these other uses and activities is the religious purpose and traditions of their weddings. (*Id.*)

As to whether the 50-person gathering restriction is neutral and generally applicable, Plaintiffs argue that (a) it is underinclusive and fails to extend exemptions to religious activity that are available for secular activity because it prohibits Plaintiffs' religious weddings but

allows secular conduct such as mass demonstrations, outdoor graduations, and indoor special education services, and (b) it discriminates against weddings in both its operation and application. (*Id.* at 16-19.)  Plaintiffs also argue that the 50-person gathering restriction must fail when subjected to strict scrutiny because it is not narrowly tailored in that Defendants cannot demonstrate that they have a compelling interest to apply the restriction to Plaintiffs' weddings given the relatively small size of their weddings (120 and 175 people) and the intention to practice social distancing and hygiene precautions during the events and the fact that Defendants have already allowed less-safe conduct to occur. (*Id.* at 20-21.)  Plaintiffs lastly argue that, even if strict scrutiny does not apply, there is no rational basis for applying the 50-person gathering restriction to Plaintiffs' weddings because Defendants' other emergency restrictions allow the same venue to operate as a restaurant with 200 patrons in the same space that Plaintiffs would be using for their weddings. (*Id.* at 21.)

### 2. The County Defendants' Opposition Memorandum of Law and Memorandum of Law in Support of Their Cross-Motion to Dismiss

Generally, in opposition to Plaintiffs' motion, the County Defendants make two arguments. (Dkt. No. 11, Attach. 5, at 4-6 [County Defs.' Opp'n Mem. of Law].)  First, the County Defendants argue that the County has no authority over the Executive Orders that Plaintiffs challenge in this action. (*Id.* at 4-5.)  Rather, the County Defendants argue, the Executive Orders themselves prohibit the County from issuing any orders that conflict with the State's Executive Orders or from taking any emergency actions related to COVID-19 response without approval of the State Department of Health, and thus the County Defendants have not taken any action in this case that can be constrained by a preliminary injunction. (*Id.*)

Second, the County Defendants argue that, to the extent that they might be found to have authority over the State's Executive Orders that Plaintiffs challenge here, the County Defendants

join in the reasons for opposition provided by the State Defendants, namely that Plaintiffs have

failed to show that they met all the requirements for a preliminary injunction.  (*Id.* at 5-6.)

Specifically, the County Defendants argue that Plaintiffs are unable to show a likelihood of

success on the merits of their claims because there are no allegations pertaining to the County

Defendants' involvement in the conduct underlying those claims other than that Defendant Erie

County Department of Health threatened an enforcement action against Plaintiffs' wedding

venue if their weddings proceeded with more than 50 individuals in attendance.  (*Id.*)

Additionally, the County Defendants make six arguments in support of their cross-motion

to dismiss Plaintiffs' Complaint against them for failure to state a claim.  (*Id.* at 6-11.)  First, the

County Defendants state that they incorporate all of the arguments made related to dismissal

made in the State Defendants' memorandum of law.  (*Id.* at 6.)

Second, the County Defendants argue that Defendant Erie County Department of Health

is an administrative unit of the County of Erie and is thus not a legally independent entity that

has the capacity to be sued.  (*Id.* at 7.)

Third, the County Defendants argue that the claims against Defendant Poloncarz must be

dismissed because the Complaint fails to assert any factual allegations related to his involvement

in those claims.  (*Id.* at 7-8.)

Fourth, the County Defendants argue that, in the alternative to dismissal of Defendant

Erie County Department of Health based on its status as an administrative arm of the County of

Erie, the claims against Defendant Erie County Department of Health must be dismissed because

Plaintiffs have included no factual allegations related to its involvement in those claims other

than to allege that it threatened an enforcement action against the wedding venue if the weddings

proceeded with more than 50 individuals in attendance, and such allegation is insufficient to

plausibly suggest any of the claims against Defendant Erie County Department of Health.  (*Id.* at 8-9.)

Fifth, the County Defendants argue that a Section 1983 claims is not legally cognizable against Defendant Poloncarz because (a) he is entitled to sovereign immunity under the Eleventh Amendment related to claims against him for damages in his official capacity, and (b) he is not a "person" within the meaning of that statute in his official capacity.  (*Id.* at 10.)

Sixth, the County Defendants argue that the Court lacks jurisdiction over Plaintiffs' Article 78 claim because such a claim is within the sole jurisdiction of the New York State Supreme Court.  (*Id.* at 10-11.)

### 3. The State Defendants' Opposition Memorandum of Law and Memorandum of Law in Support of Their Cross-Motion to Dismiss

Generally, in opposition to Plaintiffs' motion, the State Defendants make four main arguments.  (Dkt. No. 14, Attach. 3, at 31 [State Defs.' Opp'n Mem. of Law].)  First, the State Defendants argue that Plaintiffs have failed to obtain personal jurisdiction over Defendants because they have not properly served the summons and Complaint.  (*Id.* at 14-15.)  Specifically, the State Defendants argue that Plaintiffs' attempt to serve them with the Complaint, motion papers, and Text Order by email is insufficient because the State Defendants have not consented to email service, and the certificates of service filed by Plaintiffs do not document proper personal service on any of the Defendants pursuant to N.Y. C.P.L.R. § 307(2).  (*Id.*)

Second, the State Defendants argue that Plaintiffs cannot demonstrate a clear or substantial likelihood of success on the merits of any of their claims.  (*Id.* at 16-29.)  More specifically, the State Defendants argue as follows: (a) the relevant Executive Order and 50-person gathering ban is a valid expression of the State's emergency police power over matters of health and safety in that there is a real and substantial relation between the COVID-19 pandemic

and the gathering restriction, and the Court should not second-guess the State's response to a public health crisis; (b) Plaintiff has not alleged any facts from which it can be plausibly inferred that the gathering restriction infringes their religious practices, given that Plaintiffs have not pled facts about why more than 50 people are required to be present at their weddings in order to allow Plaintiffs to exercise their religious beliefs related to marriage; (c) Plaintiffs' free exercise of religion claims cannot succeed because the gathering restriction is neutral and generally applicable to all weddings (whether secular or religious) and all religious services (not just Christian or Catholic weddings), and there is a rational basis for imposing the restrictions on these events based on evidence related to "superspreader" events being the main threat of mass transmission of COVID-19; (d) the allowance of the mass demonstrations does not constitute evidence of impermissible religious targeting; (e) Plaintiffs' freedom of speech, assembly and association claims cannot succeed because the 50-person gathering restriction is a reasonable time, place, or manner restriction that is content-neutral and narrowly tailored to meet the State's legitimate interest in preventing the spread of COVID-19; (f) Plaintiffs' equal protection and substantive due process claims cannot succeed because Plaintiffs have not alleged facts plausibly suggesting the existence of comparators who are sufficiently similar but have been treated differently, the existence of any liberty or property interest in having more than 50 people present at their weddings, or the fact that the 50-person gathering restriction was arbitrary, conscious-shocking, or oppressive in a constitutional sense; (g) Plaintiffs cannot succeed on their claim that the Executive Orders were an *ultra vires* state action because the New York State Legislature has specifically granted the Governor the power to modify or suspend laws and issue directives related to an epidemic or disease outbreak disaster emergency and the traditional separation-of-powers analysis is not applicable to a disaster emergency; and (h) the Court either

does not have jurisdiction over an Article 78 proceeding or should decline to exercise jurisdiction over that claim because of the claim's inherently state-law nature, but, even if the Court were to exercise jurisdiction, Plaintiffs have not alleged facts plausibly suggesting that the 50-person gathering restriction was arbitrary, capricious, or lacked a rational basis. (*Id.* at 17-29.)

Third, the State Defendants argue that Plaintiff have failed to show that they will suffer irreparable harm in the absence of a preliminary injunction. (*Id.* at 29-30.) More specifically, the State Defendants argue that irreparable harm cannot be presumed because Plaintiffs have not alleged that the 50-person gathering restriction directly limits their First Amendment rights in particular given that Plaintiffs have not alleged facts related to which guests would be prevented from attending, their relationships to Plaintiffs, and how their absence would amount to an incurable loss of religious or life experience. (*Id.*)

Fourth, the State Defendants argue that the public interest and the relevant equitable considerations weigh in favor of denying the preliminary injunction. (*Id.* at 31.) More specifically, the State Defendants argue that the need to protect the public from COVID-19 far outweighs Plaintiffs' desire to have large weddings during the middle of a pandemic. (*Id.*)

### 4.   Plaintiffs' Reply Memorandum of Law

Generally, in reply to Defendant's response, Plaintiffs assert nine arguments. (Dkt. No. 15 [Pls.' Reply Mem. of Law].) First, Plaintiffs argue that their motion is "factually unopposed" because the declaration from Deputy Director of the New York State Department of Health's Office of Public Health Adrienne Mazeau on which the State Defendants rely has no evidentiary value due to the fact that Ms. Mazeau is not a medical doctor or an expert on pandemics or public health emergencies and therefore is not qualified to render her opinions. (*Id.* at 6-8.)

Plaintiff also argue that her declaration is merely a vehicle to introduce hearsay evidence or opinions without any basis. (*Id.*)

Second, Plaintiffs argue that the *Jacobson* test does not apply to the 50-person gathering restriction because that restriction does not have a real or substantial relation to public health and is arbitrary. (*Id.* at 9-15.)  More specifically, Plaintiffs argue that their weddings would last for only four or five hours on a single evening, would not involve an influx of persons from different areas for a significant period of time, and would not primarily involve children. (*Id.*)  Plaintiffs also argue that the number of exemptions to the 50-person gathering restriction that have been granted to activities like mass demonstrations, restaurant dining at the same venue, and graduation ceremonies shows that the limitation of that restriction to weddings is arbitrary, irrational, and pretextual. (*Id.*)

Third, Plaintiffs argue that the 50-person gathering restriction is not generally applicable and imposes a more than incidental burden. (*Id.* at 15-20.)  More specifically, Plaintiffs argue that the restriction is not generally applicable because of the existence of a multitude of exceptions to that restriction, including graduation ceremonies involving up to 150 people, the patronage of restaurants that are permitted to operate at 50-percent capacity even if that 50-percent is more than 50 people, and mass demonstrations involving more than 50 people. (*Id.*)  Plaintiffs also argue that the restriction imposes a more than incidental burden on their ability to freely exercise their religion because it is not permitting them to participate in essential activities such as sharing a meal, sharing prayer, exchanging vows, cutting cake, and presenting themselves to and assembling with their friends and family "without exceptions." (*Id.*)  Plaintiffs additionally argue that the 50-person gathering restriction discriminates against Christian

weddings specifically because the state has granted exceptions to graduation ceremonies and mass demonstrations that also might include an element of religious expression and prayer.  (*Id*.)

Fourth, Plaintiffs argue that their rights of expressive and intimate association have been violated because the 50-person gathering restriction is not narrowly tailored or the least-restrictive means.  (*Id.* at 20.)

Fifth, Plaintiffs argue that the Equal Protection Clause has been violated because Plaintiffs have been treated differently than restaurant patrons at their wedding venue because normal restaurant dining at the venue is subject to a 50-percent capacity limitation rather than the 50-person gathering restriction that applies to Plaintiffs' weddings at the same venue, and there is no basis for the different treatment.  (*Id.* at 21.)

Sixth, Plaintiffs responds as follows related to issues raised in Defendants' cross-motions to dismiss: (a) Plaintiffs have properly served the State Defendants by delivering the summons to the Attorney General's Office in-person and mailed copies to each State Defendant; (b) the County Defendants cannot escape liability merely because they did not issue the Executive Orders, given that they were involved in selectively enforcing those orders by threatening to enforce the Executive Orders against Plaintiffs if they proceeded with their weddings with more than 50 individuals; (c) the County Defendants have not presented any evidence to support their argument that Defendant Erie County Department of Health is not subject to suit; (d) Plaintiffs have sufficiently alleged the basis for including the County Defendants as Defendants in this action; and (e) Defendant Poloncarz can be properly sued under Section 1983 because a local official sued in his or her official capacity is a "person" for the purposes of that statute, and Eleventh Amendment sovereign immunity does not bar suits for injunctive relief against individuals.  (*Id.* at 21-24.)

Seventh, Plaintiffs argue that they have shown irreparable harm because they have alleged a violation of their First Amendment rights, and they have alleged that the restriction is compelling them to forgo a seminal life experience (based on their sincerely held religious beliefs that marriage is to be enjoyed with family and friends) by "outright prohibit[ing]" them from enjoying that experience.  (*Id.* at 24-25.)

Eighth, Plaintiffs argue that an injunction is in the public interest because the vindication and protection of constitutional rights is in the public interest, the exemptions Defendants have allowed for other activities undermine Defendants' assertions that the public interest requires strict measures like the 50-person gathering restriction, and Defendants will suffer no harm from an injunction given that Plaintiffs will comply with all other state-mandated safety precautions related to preventing the spread of COVID-19 during their wedding.  (*Id.* at 25-26.)

Ninth, and finally, as to Defendants' remaining arguments related to their motions to dismiss, Plaintiffs argue that (a) they have stated a claim for ultra vires state action because the authority cited by the State Defendants does not give the Governor the power to unilaterally create law or suspend law outside the bounds of the Constitution or other law, and (b) the Court should exercise jurisdiction over Plaintiffs' Article 78 claim because it arises from the same facts and circumstances as their constitutional claims.  (*Id.* at 26-27.)

### 5.   County Defendants' Supplemental Declaration

In a supplemental declaration, the County Defendants indicated that they wished to withdraw their argument in their motion to dismiss related to the propriety of suing Defendant Poloncarz in his official capacity under Section 1983.  (Dkt. No. 16.)

### C.   Hearing on August 7, 2020

On August 7, 2020, the Court held a video conference hearing related to the current motions. At the hearing, counsel presented no witnesses but only oral argument.

## II.   GOVERNING LEGAL STANDARD

"'The purpose of a preliminary injunction is . . . to preserve the relative positions of the parties.'"  *N. Am. Soccer League, LLC. v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37-38 (2d Cir. 2018) ("*N. Am. Soccer*") (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 [1981]).  "A preliminary injunction is an 'extraordinary and drastic remedy' . . . ; it is never awarded as of right . . . ."  *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations omitted). Generally, in the Second Circuit, a party seeking a preliminary injunction must establish the following three elements: (1) that there is either (a) a likelihood of success on the merits and a balance of equities tipping in the party's favor or (b) a sufficiently serious question as to the merits of the case to make it a fair ground for litigation and a balance of hardships tipping decidedly in the party's favor; (2) that the party will likely experience irreparable harm if the preliminary injunction is not issued; and (3) that the public interest would not be disserved by the relief.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (reciting standard limited to first part of second above-stated element and using word "equities" without the word "decidedly"); *accord, Glossip v. Gross*, 135 S. Ct. 2726, 2736-37 (2015); *see also Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 825 (2d Cir. 2015) (reciting standard including second part of second above-stated element and using words "hardships" and "decidedly"); *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 38 (2d Cir. 2010) (holding that "our venerable standard for assessing a movant's probability of success on the merits remains valid [after the Supreme Court's decision in *Winter*]").

With regard to the first part of the first element, a "likelihood of success" requires a demonstration of a "better than fifty percent" probability of success. *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985), *disapproved on other grounds, O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, n.2 (1987). "A balance of equities tipping in favor of the party requesting a preliminary injunction" means a balance of the hardships against the benefits. *See, e.g., Ligon v. City of New York,* 925 F. Supp.2d 478, 539 (S.D.N.Y. 2013) (characterizing the balancing "hardship imposed on one party" and "benefit to the other" as a "balanc[ing] [of] the equities"); *Jones v. Nat'l Conference of Bar Examiners,* 801 F. Supp. 2d 270, 291 (D. Vt. 2011) (considering the harm to plaintiff and any "countervailing benefit" to plaintiff in balancing the equities); *Smithkline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.,* 99-CV-9214, 1999 WL 34981557, at *4-5 (S.D.N.Y. Sept. 13, 1999) (considering the harm to defendant and the "benefit" to consumers in balancing the equities); *Arthur v. Assoc. Musicians of Greater New York*, 278 F. Supp. 400, 404 (S.D.N.Y. 1968) (characterizing "balancing the equities" as "requiring plaintiffs to show that the benefit to them if an injunction issues will outweigh the harm to other parties"); *Rosenstiel v. Rosenstiel*, 278 F. Supp. 794, 801-02 (S.D.N.Y.1967) (explaining that, in order to "balance the equities," the court "will consider the hardship to the plaintiff . . . , the benefit to [the] plaintiff . . . , and the relative hardship to which a defendant will be subjected") [internal quotation marks omitted].[1]

With regard to the second part of the first element, "[a] sufficiently serious question as to the merits of the case to make it a fair ground for litigation" means a question that is so "substantial, difficult and doubtful" as to require "a more deliberate investigation." *Hamilton*

---

[1]      *See also Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12, n.2 (7th Cir. 1992) ("Weighing the equities as a whole favors X, making preliminary relief appropriate, even though the *undiscounted* balance of harms favors Y.") [emphasis added].

*Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953); *accord, Semmes Motors, Inc. v. Ford Motor Co.,* 429 F.2d 1197, 1205-06 (2d Cir. 1970).[2] "A balance of hardships tipping decidedly toward the party requesting a preliminary injunction" means that, as compared to the hardship suffered by other party if the preliminary injunction is granted, the hardship suffered by the moving party if the preliminary injunction is denied will be so much greater that it may be characterized as a "real hardship," such as being "driven out of business . . . before a trial could be held." *Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 58 (2d Cir. 1979); *Int'l Bus. Mach. v. Johnson*, 629 F. Supp.2d 321, 333-34 (S.D.N.Y. 2009); *see also Semmes Motors, Inc.,* 429 F.2d at 1205 (concluding that the balance of hardships tipped decidedly in favor of the movant where it had demonstrated that, without an injunctive order, it would have been forced out of business as a Ford distributor).[3]

With regard to the second element, "irreparable harm" is "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Import Sales Co. v. Labatt*

---

[2]     *See also Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997); *Rep. of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988); *City of Chanute v. Kansas Gas and Elec. Co.,* 754 F.2d 310, 314 (10th Cir. 1985); *R.R. Yardmasters of Am. v. Penn. R.R. Co.*, 224 F.2d 226, 229 (3d Cir. 1955).

[3]     The Court notes that, under the Second Circuit's formulation of this standard, the requirement of a balance of *hardships* tipping *decidedly* in the movant's favor is added only to the second part of the first element (i.e., the existence of a sufficiently serious question as to the merits of the case to make it a fair ground for litigation), and not also to the first part of the first element (i.e., the existence of a likelihood of success on the merits), which (again) requires merely a balance of *equities* (i.e., hardships and benefits) tipping in the movant's favor. *See Citigroup Global Markets, Inc.*, 598 F.3d at 36 ("Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips decidedly' in its favor . . . , its overall burden is no lighter than the one it bears under the 'likelihood of success' standard.") (internal citation omitted); *cf. Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp.2d 186, 192 (E.D.N.Y. 2013) ("[T]he *Winter* standard . . . requires the balance of equities to tip in the movant's favor, though not necessarily 'decidedly' so, even where the movant is found likely to succeed on the merits.").

*Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003). Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).

With regard to the third element, the "public interest" is defined as "[t]he general welfare of the public that warrants recognition and protection," and/or "[s]omething in which the public as a whole has a stake[,] esp[ecially], an interest that justifies governmental regulation." Public Interest, *Black's Law Dictionary* (9th ed. 2009).

The Second Circuit recognizes three limited exceptions to the above-stated general standard. *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4.

First, where the moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous "serious questions" standard but should grant the injunction only if the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim. *Id.* (citing *Able v. United States*, 44 F.3d 128, 131 [2d Cir. 1995]); *see also Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) ("A plaintiff cannot rely on the 'fair-ground-for-litigation' alternative to challenge governmental action taken in the public interest pursuant to a statutory or regulatory scheme.") (internal quotation marks omitted). This is because "governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." *Able,* 44 F.3d at 131.

Second, a heightened standard–requiring both a "clear or substantial" likelihood of success and a "strong" showing of irreparable harm"–is required when the requested injunction

(1) would provide the movant with all the relief that is sought and (2) could not be undone by a judgment favorable to non-movant on the merits at trial. *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4 (citing *Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 [2d Cir. 2006]); *New York v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) ("When either condition is met, the movant must show [both] a 'clear' or 'substantial' likelihood of success on the merits . . . *and* make a 'strong showing" of irreparable harm' . . . .") (emphasis added).

Third, the above-described heightened standard may also be required when the preliminary injunction is "mandatory" in that it would "alter the status quo by commanding some positive act," as opposed to being "prohibitory" by seeking only to maintain the *status quo*. *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4 (citing *Tom Doherty Assocs. v. Saban Entm't*, 60 F.3d 27, 34 [2d Cir. 1995]).[4]

Because the parties have demonstrated in their memoranda of law an adequate understanding of this legal standard, the Court need not, and does not, further elaborate on this legal standard in this Decision and Order, which (again) is intended primarily for the review of the parties.

## III.   ANALYSIS

### A.   Irreparable Harm

"Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015).  The showing of irreparable

---

[4]    Alternatively, in such a circumstance, the "clear or substantial likelihood of success" requirement may be dispensed with if the movant shows that "extreme or very serious damage will result from a denial of preliminary relief." *Citigroup Global Markets, Inc.*, 598 F.3d at 35, n.4 (citing *Tom Doherty Assocs. v. Saban Entm't*, 60 F.3d 27, 34 [2d Cir. 1995]).

harm "is the single most important prerequisite for the issuance of a preliminary injunction."

*Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 233-34 (2d Cir. 1999).  The Court can

presume irreparable injury where it is alleged that a constitutional right has been violated.  *See*

*Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (finding that the district court's presumption

of irreparable harm based on a showing of substantial likelihood of success on the merits on an

Eighth Amendment claim was appropriate because "it is the *alleged* violation of a constitutional

right that triggers a finding of irreparable harm").

As will be discussed more fully below, the Court finds that the showing Plaintiffs have

made as to the likelihood of success on the merits of their equal protection claim merit a

presumption of irreparable harm on that basis.  Furthermore, the Court finds that no evidence or

argument adduced by Defendants have rebutted that presumption.

## B.   The Effect of *Jacobson* on the Analysis of Plaintiffs' Claims

As this Court explained in its recent decision in *Ass'n of Jewish Camp Operators v.*

*Cuomo*, 20-CV-0687, 2020 WL 3766496, at *7-8 (N.D.N.Y. July 6, 2020) (Suddaby, C.J.), in the

context of a significant public health emergency like the COVID-19 pandemic, courts must

consider whether the government's challenged action lacks a "real or substantial relation [to

public health]" or is "beyond all question, a plain, palpable invasion of rights" when determining

whether the action reasonably and permissibly restricts constitutional rights to combat a public

health emergency.  *Ass'n of Jewish Camp Operators*, 2020 WL 3766496, at *8 (quoting

*Jacobson v. Massachusetts*, 197 U.S. 11 [1905]); *see S. Bay United Pentecostal Church v.*

*Newsome*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring) (stating that, when state

officials "undertake[ ] to act in areas fraught with medical and scientific uncertainties, their

latitude must be especially broad," and that, where the broad limits of authority are not exceeded,

the restrictions imposed by state officials in response to a pandemic or health emergency should not be subject to "second guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health and is not accountable to people"). "Courts may ask whether the state's emergency measures lack basic exceptions for 'extreme cases,' and whether the measures are pretextual—that is, arbitrary or oppressive," but should not "second-guess the wisdom or efficacy of the measures." *In re Abbott*, 954 F.3d 772, 784-85 (5th Cir. 2020).

This Court further emphasized that the "'police power of a state . . . may be exerted in such circumstances, or by regulations so arbitrary and oppressive in particular cases, as to justify the interference of the courts to prevent wrong and oppression.'" *Ass'n of Jewish Camp Operators*, 2020 WL 3766496, at *10 (quoting *Jacobson*, 197 U.S. at 38). A State's "authority to respond to an emergency, while broad, is not without limits: it may not be arbitrary or oppressive." *Id.* Accordingly, when reviewing the facts of a case under the *Jacobson* standard, the Court analyzes a plaintiff's claims under the rational basis standard of review. *Id.* at *9.

Here, the Court finds that, despite the application of *Jacobson* and its progeny, the State's 50-person gathering restriction on social gatherings is impermissibly arbitrary under the facts of this case. As will be discussed in more detail below, the State has failed to adequately rebut Plaintiffs' argument that a 50-person limit on a social gathering is not consistent with Defendants' allowance of exemptions to the 50-person gathering restriction for activities such as dining at restaurants and participating in graduation ceremonies.

### C.   Likelihood of Success on the Merits

Because the Court finds Plaintiff's equal protection claim to be the strongest of the five they assert, the Court will focus its analysis on that claim.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).  "[T]he equal protection guarantee . . . extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). "To state an equal protection claim, a plaintiff must charge a governmental officer 'not only with deliberately interpreting a statute against the plaintiff, but also with singling him out alone for that misinterpretation.'" *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994).  Where a plaintiff is not a member of a constitutionally protected class, "he may bring an equal protection claim pursuant to one of two theories: (1) selective enforcement, or (2) 'class of one.'" *AYDM Associates, LLC v. Town of Pamelia*, 205 F. Supp. 3d 252, 265 (N.D.N.Y. 2016) (D'Agostino, J.) (citation omitted).

To succeed under a selective enforcement theory, a plaintiff must establish that (1) he, "compared with others similarly situated, was selectively treated," and (2) "the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, . . . to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (citation omitted).  A plaintiff must identify comparators that "'a reasonably prudent person would think were roughly equivalent'" to the plaintiff, though the plaintiff does not need to show an "exact correlation" between them and that similarly situated person. *AYDM Associates*, 205 F. Supp. 3d at 265 (quoting *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 696 [S.D.N.Y. 2011]).

To succeed under a class-of-one theory, a plaintiff must establish that he was "intentionally treated differently from others similarly situated and 'there is no rational basis for the difference in treatment.'" *Id.* (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 [2000]). A class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons [with] whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). A plaintiff is not required to prove "a defendant's subjective ill-will towards a plaintiff," and can prevail on a class-of-one claim based on similarity alone. *Hu v. City of New York*, 927 F.3d 81, 93 (2d Cir. 2019). To prevail on similarity alone, a plaintiff must prove as follows: "'(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.'" *Hu*, 927 F.3d at 94 (quoting *Neilson v. D'Angelis*, 409 F.3d, 100, 104-05 [2d Cir. 2005]).

Here, after carefully considering the matter, the Court finds that Plaintiffs have shown a likelihood of success on the merits of their claim under the Equal Protection Clause for the reasons stated by Plaintiffs in their memoranda of law (and during the hearing). To those reasons, the Court adds the following analysis, which is intended to supplement and not supplant those reasons.

As to the existence of a similarly situated comparator, Plaintiffs point to the fact that each venue at which they are scheduled to have their weddings also operates as a restaurant. As asserted in Plaintiffs' Verified Complaint, and as argued in their papers and at the hearing, the activities that will be engaged in during a wedding will be much the same as those engaged in

while dining at a restaurant, including having groups of individuals of no more than ten in number at tables seated for dining.  Additionally, as Plaintiffs' counsel argued at the hearing (and as discussed in the submitted declaration from the venue's owner), patrons shall be required to follow all of the State's social-distancing, mask-wearing, and other health and safety guidelines and directives when on the premises, including when participating in the wedding ceremony: the venue's owner has sworn that all of their safety policies will be in place and be enforced during Plaintiffs' weddings.  (Dkt. No, 4, Attach. 3, at ¶¶ 6-12 [James Decl.].)  Thus, the record evidence before the Court establishes that there is no real material difference between the activities or the safety risk in the venues at a wedding that is compliant with the State's guidelines and during normal dining operations.

However, despite this high degree of similarity between the two uses of the same venues, ordinary dining and weddings are treated differently by Defendants.  Ordinary dining use is permitted to involve a number of patrons (at any one time) equal to up to 50 percent of the venue's maximum occupancy, while wedding use is subject to the general 50-person gathering restriction.  Based on the evidence provided in this case, the Court can find no rational basis for this State's difference in treatment between use of the venues in question for ordinary dining and use of those venues for weddings.  In particular, there is no discernable rational reason for limiting a wedding use of the venues to only 50 individuals when the individuals present at the wedding would be required to abide by the same safety rules applicable to ordinary diners, such as limiting the number of people at each table, requiring people to stay at their tables (when not visiting the rest room or bar), requiring people to wear masks when not at their table, and prohibiting dancing, among other things.  Simply put, if these limitations are sufficient to protect the State's interest in preventing the spread of COVID-19 when implemented in restaurants at

50-percent capacity, there is no rational reason why they are not also sufficient to protect that interest in a wedding at 50-percent capacity.  The Court is not persuaded by the State Defendants' argument that the fact that part of the purpose of a wedding is for the married couple to interact with friends and family is sufficient to justify finding that weddings are practically dissimilar from ordinary dining and thus do not merit to be treated the same as an ordinary dining use of the venue.  Nor is the Court persuaded that Plaintiffs are required to somehow prove that they will comply with all of the required measures in order to show entitlement to relief, given that the myriad of other non-essential businesses or uses that have been allowed to operate under the current reopening plans are not routinely required to show such compliance *before* being allowed to proceed with their operations.  Plaintiffs and the venues' owner have made assurances that they are willing to comply with all the same requirements that the State has deemed to be sufficient to mitigate the risk of operating a restaurant for dining purposes at a 50-percent occupancy capacity, and there is nothing stopping Defendants from taking measures to ensure that they do in fact comply with those requirements or to take enforcement measures against them if they fail to do so.

Additionally, the Court notes that Defendants have granted other exceptions to the general 50-person gathering restriction, the most notable of which is for 150-person outdoor graduation ceremonies.  Although not quite as similar to an indoor wedding as is the dining activity mentioned above, graduation ceremonies also involve significant interaction between people and families as they come together to celebrate with one another; and yet the State has allowed gatherings of three times the limit applicable to all other gatherings. Although this exception may not be similar enough to satisfy the stringent standard applicable to a class-of-one

claim, it is certainly additional support for the Court's conclusion that the State Defendants have failed to treat similar conduct in a similar manner.

The Court cautions that it is not implying that *any* wedding (particularly the typical wedding that existed before the COVID-19 pandemic) would be sufficiently similar to a typical dining experience, and is certainly not implying that these weddings should be permitted to proceed in any manner in which they like.  In fact, this case presents a unique situation in that the Plaintiffs' chosen venues are already operating as functioning restaurants in addition to wedding venues and thus the unequal treatment is happening as a result of two different uses of the same venue.  Rather, the Court is finding that a wedding that follows all the same rules that would be applicable to the given venue for dining when that venue is operating as a restaurant should not be treated differently than a restaurant.  Nothing in this Decision and Order is intended to supersede the State's authority to enforce those normal safety requirements and precautions that are applicable to restaurants against Plaintiffs' weddings.  The purpose and the effect of this Decision and Order is to place Plaintiffs' weddings on an equal footing with such restaurant operations, because that is what the Equal Protection Clause guarantees.

### D.       Balance of Equities

Lastly, the Court finds that the balance of the equities and the public interest in granting a preliminary injunction are both in favor of Plaintiffs.  As discussed above, the likelihood that Plaintiffs will succeed on their equal protection claim means that the public interest would be served by protecting their constitutional rights. *See Roberts v. Neace*, 958 F.3d 409, 416 (6th Cir. 2020) ("[T]reatment of similarly situated entities in comparable ways serves public health interest at the same time it preserves bedrock free-exercise guarantees.").  Additionally, because the same restrictions that Plaintiffs would be expected to follow in holding their weddings have

already been deemed to be sufficient to mitigate the spread of COVID-19 in a restaurant setting, the Court can see no reason that applying those same restrictions to Plaintiffs' weddings would harm the State's interests.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiffs' motion for a preliminary injunction (Dkt. No. 4) is **GRANTED**; and it is further

**ORDERED** that Defendants are **PRELIMINARILY ENJOINED** from enforcing the above-referenced 50-person limit (under Executive Order 202.45 and attendant regulations, guidance, and directives) against Plaintiffs in the operation of their weddings at the above-referenced venues; and it is further

**ORDERED** that, in holding their weddings, Plaintiffs are required to comply at all times with the relevant health and safety precautions that have been outlined by the State related to the operations of restaurants, including (but not limited to) not having a gathering of individuals that is more than 50-percent of the relevant venue's capacity.

Dated:  August 7, 2020
        Syracuse, New York


Glenn T. Suddaby
Chief U.S. District Judge