UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JENNA M. DIMARTILE, JUSTIN G. CRAWFORD,
PAMELA GIGLIA, JOE DUROLEK, and
DAVID SHAMENDA

                    Plaintiffs,

            -against-

ANDREW M. CUOMO, LETITIA JAMES,
EMPIRE STATE DEVELOPMENT
CORPORATION, and ERIE COUNTY
DEPARTMENT OF HEALTH

                    Defendants.
_____

**MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFFS'
FEE APPLICATION**

Civil No. 1:20-CV-0859

Respectfully submitted,
**RUPP BAASE PFALZGRAF CUNNINGHAM, LLC**
*Attorneys for Plaintiffs*
R. Anthony Rupp III, Esq.
Bar Roll # 502559
Phillip A. Oswald, Esq.
Bar Roll # 519974
Michael Brandi, Esq.
Bar Roll # 700481
25 Walton Street
Saratoga Springs, New York 12866
(518) 886-1902

## PRELIMINARY STATEMENT

In August 2020, Plaintiffs won a preliminary injunction that enjoined the State of New York, Erie County Department of Health, Empire State Development Corporation, and individual defendants Andrew M. Cuomo and Letitia James (collectively referred to as "Defendants") from enforcing a 50-person limit under Executive Order 202.45 against Plaintiffs for their weddings.  Plaintiffs' chosen wedding venue, when operated as an ordinary restaurant, could host patrons up to its 50%-occupancy limit.  Plaintiffs wished to follow the same rules and regulations in place when their venue operated as a restaurant, and commenced this lawsuit to legally challenge Defendants' refusal to allow an exception to the 50-person 'social gathering' limit for their weddings.

This Court granted a preliminary injunction finding, inter alia, a substantial likelihood of success on the merits in Plaintiffs' favor.  The State defendants sought a stay of the preliminary injunction pending appeal to the Second Circuit, and submitted further evidence in support of that motion.  This Court upheld the injunction when, after considering the State's new proof, it denied their motion for a stay of the injunction.

The preliminary injunction remained in force, prohibiting Defendants from enforcing the 50-person gathering limit under Executive Order 202.45 against Plaintiffs for their weddings.  The need for the injunction was mooted when Plaintiffs DiMartile and Crawford were married on August 7, 2020 and, while on appeal, the State materially changed the gathering limits throughout New York State, implementing a "Cluster Action Initiative."  While the State's appeal was pending, Erie County, where the Plaintiffs' wedding venue was located, was classified as an "orange" zone and, therefore, was subject to an even more restrictive 10-person

1

limitation on gatherings — an issue not on appeal.  Due to this more restrictive limitation on gatherings, Plaintiffs Giglia and Durolek made the difficult decision to postpone their wedding ceremony until New York's COVID-19 gathering limitations are no longer in effect.  The Second Circuit agreed with Plaintiffs' assertion that their claims were moot and dismissed the State's appeal.  *See DiMartile v. Cuomo*, 834 Fed. Appx. 677 (Mem) (2d Cir. 2021).

As explained below, having fully achieved the relief sought in the instant lawsuit, Plaintiffs now move pursuant to 42 U.S.C. § 1988 for an award of reasonable attorneys' fees. Plaintiffs seek fees totaling $124,280 and costs in the amount of $916.50, for a total award of $125,196.50.[1]  The requested award is particularly reasonable in light of the novelty and complexity of the issues involved in the litigation, as well as the degree of success Plaintiffs' attorneys achieved for their clients.  Plaintiffs' request for reasonable attorney fees and costs thus is fully warranted.

## RELEVANT FACTUAL BACKGROUND

For the convenience of this Court, Plaintiffs respectfully direct its attention to the Sworn Declaration of Counsel for the Plaintiffs Phillip A. Oswald, Esq. ("Oswald Decl."), and

---

[1] As Plaintiffs prevailed in their claims against each Defendant, all defendants are jointly and severally liable for Plaintiffs' requested fee award.  *See Rai v. WB Imico Lexington Fee, LLC*, Civ. No. 09-CV-9586, 2017 WL 1215004, at *7 (S.D.N.Y. Mar. 31, 2017) ("[t]he allocation of fee liability is a matter committed to the district court's discretion") (citing *Koster v. Perales*, 903 F.2d 131, 139 (2d Cir. 1990).  This Court may apportion liability for fees amongst the Defendants as the Court deems just.  *See, e.g., Hendrickson v. Branstad*, 934 F.2d 158, 164 (8th Cir. 1991) (affirming the district court's allocation of ninety percent of the fee award against the state officials and ten percent of the fee award against the County based on the "interrelated nature of the claims against the state and county officials, [and] the primary culpability of the state officials"); *see also Carroll v. Blinken*, 105 F.3d 79, 82 (1997) (remanding to district court to determine apportionment of attorneys' fees).

the Sworn Declaration of Attorney John L. Barone, Esq. ("Barone Decl.") for a full narrative of

the factual and procedural background relevant to Plaintiffs' fee application.

## **ARGUMENT**

A court must apply a two-step inquiry to analyze an award of attorneys' fees in a

Section 1988 application. *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996). "First, the party

must be a 'prevailing party' in order to recover. If she is, then the requested fee must also be

reasonable." *Id*. (citations omitted). To determine the amount of attorneys' fees, the Court must

calculate the "presumptively reasonable fee," which requires consideration of "the case-specific

variables" to ascertain a reasonable hourly rate and the reasonable number of hours required.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190

(2d Cir. 2008) ("[t]he reasonable hourly rate is the rate a paying client would be willing to pay").

As explained below, a plaintiff who obtains a preliminary injunction is a

"prevailing party" under 42 U.S.C. § 1988 if the plaintiff "has been awarded some relief by the

court" that creates a "material alteration of the legal relationship of the parties." *Buckhannon

Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*,

532 U.S. 598, 603 (2001). Here, Plaintiffs are the prevailing parties as the preliminary injunction

entered by this Court allowed them to exercise their Constitutional right to marry without threat

of interference by the Defendants. Therefore, Plaintiffs' attorneys are entitled to hourly rates

consistent with those charged in Upstate New York for equally complex litigation.

## POINT I

## AS THE PREVAILING PARTY, PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND EXPENSES UNDER 42 U.S.C. § 1988

The first step in determining whether an award of attorneys' fees is appropriate in any civil rights case is to examine whether the party "crossed the 'statutory threshold' of prevailing party status." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989). This is a "generous formulation," and if the plaintiff succeeds "'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit,'" then she is a prevailing party. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (citations omitted). Indeed, "[t]he touchstone of the prevailing party inquiry . . . is the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole v. Wyner*, 551 U.S. 74, 82 (2007) (internal citations and quotation marks omitted). The material change in the legal relationship must be brought about by some relief awarded by the court. *Buckhannon*, 532 U.S. at 604. This is true even when the judicial relief obtained is a preliminary injunction, so long as the injunction is not later undone by a final decision in the case. *See, e.g., Haley v. Pataki*, 106 F.3d 478, 480-83 (2d Cir. 1997) (upholding District Court's grant of attorneys' fees to a plaintiff who obtained preliminary injunction which ultimately became moot with the passage of time).

In *Haley*, the Second Circuit concluded that attorneys' fees were appropriate because "the district court's decision to issue the injunction was clearly based on the likelihood of the plaintiff's success on the merits." *Id.* at 483. "When a party receives a stay or preliminary injunction but never obtains a final judgment, attorney's fees are proper if the court's action in granting the preliminary injunction is governed by its assessment of the merits." *Id.* The Second

4

Circuit reaffirmed *Haley*'s holding that attorneys' fees are appropriate if a court orders preliminary injunctive relief on the merits. *See Vacchio v. Ashcroft*, 404 F.3d 663, 673 (2d Cir. 2004); *see also Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 717 (9th Cir. 2013) (concluding award of attorneys' fees to plaintiff was proper as "the preliminary injunction ended up affording all the relief that proved necessary").[2]

Here, the District Court's decisions in granting the Plaintiffs' request for a preliminary injunction (*see* Dkt. 20), and its subsequent denial of the State's request for a stay of the injunction (*see* Dkt. 37), clearly addressed the merits of Plaintiffs' claims. To obtain a preliminary injunction, Plaintiffs needed make a "strong showing of likelihood of success on the merits." (*See* Dkt. 20, pp. 21-24; Dkt. 37, pp. 17-20). This Court explained, and reaffirmed, its decision finding that Plaintiffs satisfied this heightened burden. (*See* Dkt. 37, p. 23 "[T]he Court finds that . . . the allegations, the evidence, and the Court's findings all support a conclusion that Plaintiffs have met that heightened standard").

The essential facts surrounding Plaintiffs' application for injunctive relief were laid bare at the August 7th and August 19th hearings, as well as the papers submitted in support of Plaintiffs' application. In support of their application for injunctive relief, Plaintiffs argued, inter alia, that the 50-person limit then imposed by Defendants for their wedding lacked a rational basis as patrons who dine at the <u>same</u> restaurant and participate in the <u>same</u> activity—

---

[2] Although Defendants likely will try to argue that the grant of a stay by the Second Circuit somehow impacted Plaintiffs' prevailing party status, such an argument lacks merit. *Kirk v. New York State Dept. of Educ.*, 644 F.3d 134, 138 (2d Cir. 2011) (affirming award of attorneys' fees where plaintiff was awarded summary judgment and "no court overturned [plaintiff's] favorable judgment on the merits or rejected the legal premise of the district court's decision"). Like *Kirk*, the stay did not consider the merits of Plaintiffs' claims, nor did it reject this Court's reasoning in granting Plaintiffs' request for a preliminary injunction. *Id.*

dining—fall under the 50%-capacity limit rather than an arbitrary 50-person limit that Defendants were seeking to enforce.  (*See* Dkt. 4-1, pp. 10-11).

In rebuttal, Defendants attempted to argue a rational relation between the 50-person gathering limitation and preventing the spread of COVID—despite assurances from Plaintiffs that they would follow all rules and protocols applicable when the venue operates as a restaurant.  (*See* Dkt. 20, pp. 19-24).  This Court rejected the State's rationale as senseless, particularly where Defendants already granted other exceptions to the general 50-person gathering restriction and there was nothing stopping Defendants from taking enforcement measures to ensure that Plaintiffs and their wedding guests do in fact comply with the venue's rules and protocols applicable when it operates as a restaurant.  (*See id*.)

The Court then ruled that there was a 'strong likelihood of success on the merits' and granted Plaintiffs' request for a preliminary injunction.  (*See* Dkt. 20).  Notably, the State later filed a motion seeking a stay of the preliminary injunction pending appeal.  (*See* Dkt. 27).  The State filed new evidence in support of that motion, arguing that regular dining in a restaurant is not sufficiently comparable to attendance at a wedding.  (Dkt. 27, pp. 6-7).  That evidence did not change this Court's view of the merits.  (*See* Dkt. 37, pp. 8-17).  Notably, the Court stated that, after considering the State's new evidence, "the Court is not persuaded that there is a rational basis for refusing to apply the restaurant-specific restrictions to the weddings here." (Dkt. 37, p. 17).

Applying the well-settled principals above, Plaintiffs clearly meet the definition of "prevailing party" under 42 U.S.C. § 1988, as the preliminary injunction they obtained

materially altered the legal relationship between the parties.  The preliminary injunction

precluded Defendants from enforcing the 50-person limit (under Executive Order 202.45 and

attendant regulation, guidance, and directives) against Plaintiffs for their weddings.  (*See* Dkt.

20, p. 25).  This Court found not once, but twice, that had the litigation proceeded to final

judgment, Plaintiffs likely would have prevailed on the merits.  The record, therefore, is clear

that Plaintiffs "crossed the 'statutory threshold' of prevailing party status."  *Texas State Teachers*

*Ass'n*, 489 U.S. at 789.


## POINT II

## THE ATTORNEYS' FEES REQUESTED BY PLAINTIFFS ARE REASONABLE

"Once a district court determines that a party has prevailed, it must calculate what

constitutes a reasonable attorney's fee."  *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).  The

Supreme Court-prescribed "starting point" for determining the attorneys' fees due to a prevailing

party under Section 1988 "is the number of hours reasonably expended on the litigation

multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The

resulting product, or "lodestar figure," is presumed to be the reasonable fee.  *See Perdue v.*

*Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) ("there is a 'strong presumption' that the

lodestar figure is reasonable"); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,

483 U.S. 711, 728 (1987) (stating that the product of reasonable hourly rates and the number of

hours expended "is presumed to be the reasonable fee"); *Arbor Hill Concerned Citizens*

*Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183, 189-90 (2d Cir. 2008) (stating that

the lodestar amount represents a "presumptively reasonable fee" under Section 1988).

Submitted with plaintiffs' fee application as Exhibit B are contemporaneous time records that provide a detailed overview of the tasks and out-of-pocket expenses that were required for a successful resolution for Plaintiffs. Plaintiffs' claim for fees is the product of a reasonable number of hours expended multiplied by an appropriate hourly rate. Because counsel obtained excellent results for the Plaintiffs, Rupp Baase is entitled to an award that fully compensates the legal work performed on Plaintiffs' behalf.

## A.   <u>The Requested Hourly Rates are Reasonable</u>.

A reasonable hourly rate is one that is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable and is referred to . . . as the prevailing market rate." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *see Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) (noting that the aim of fee-shifting statutes is to approximate "the prevailing market rates in the relevant community") (quoting *Blum*, 465 U.S. at 895); *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009) ("district courts are directed to calculate attorney's fees based on the rates prevalent in the forum in which the litigation was brought"). Determination of the "reasonable hourly fee" requires "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel." *Farbotko v. Clinton Cnty. N.Y.*, 433 F.3d 204, 209 (2d Cir. 2005). This inquiry may "include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district" along with any "evidence proffered by the parties." *Id*.

8

The legislative history of 42 U.S.C. § 1988, quoted approvingly by the Supreme Court, states that "[i]t is intended that the amount of fees awarded . . . be governed by the same standards which prevail in other types of equally complex federal litigation, such as antitrust cases." *Blum v. Stenson*, 465 U.S. 886, 893 (1984).  Stated another way, "a 'reasonable fee' is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights claim."  *Kenny A.*, 559 U.S. at 552.

Courts often look to the attorneys' customary rate as a logical starting point for determining the reasonable hourly rate for purposes of a fee calculation.  *See, e.g., Mugavero v. Arms Acres, Inc.*, 2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010) (citing cases); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 544-45 (S.D.N.Y. 2008) ("rates that plaintiff's counsel actually charge their clients . . . [are] obviously strong evidence of what the market will bear").  Here, the rates charged by Rupp Baase are the rates actually charged to that firm's clients in the normal course of business for their work in equally complex litigation matters, and are consistent with billing rates of other Upstate New York law firms as attested to by John L. Barone, Esq. (*See* Oswald Decl. ¶¶ 31-33; Declaration of John L. Barone, Esq., sworn to on April 16, 2021).

Here, Plaintiffs ask the Court to award reasonable rates of $395 per hour for Attorney Rupp; $300 per hour for Attorney Oswald; and $250 per hour for Messrs. Brandi and Davenport.  These rates are the customary rates for these attorneys and are reasonable based on the prevailing rates in the Norther District.  *See Broadcast Music, Inc. v. DeJohn's on Lark, Inc.*, 1:19-CV-637 (FJS/CFH), 2020 WL 1986903, at *7 (N.D.N.Y. Apr. 27, 2020) (finding a rate of $325/hour reasonable) (Scullin, J.); *Doe v. Cornell Univ.*, No. 3:17-CV-402 (GTS/DEP), 2019 WL 1567535, at *18 (N.D.N.Y. Apr. 11, 2019) (holding that rate of $350/hour reasonable)

(Suddaby, C.J.). As explained in the Declarations of Mr. Oswald, Rupp Baase has extensive experience in civil rights litigation and Mr. Rupp has an excellent reputation for trial work and Constitutional law related litigation matters. (Oswald Decl. at ¶¶ 28-33). The rates being sought are well within the range of rates actually charged by comparable law firms in the Upstate New York region.

### B.    The Hours Expended Were Reasonable.

The reasonableness of the hours an attorney expends rests on "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). Hours expended "should generally be documented by contemporaneously created time records that specify for each attorney, the date, the hours expended, and the nature of the work done." *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014) (citation omitted). Work done prior to the filing of a complaint is included when the work "was useful to advance the federal claims subsequently asserted [in the complaint]." *Davis v. City of New York*, 2011 WL 4946243, at *5 (S.D.N.Y. Oct. 18, 2011). Compensable pre-complaint work includes "work associated with the development of the theory of the case." *Webb v. Bd. Of Educ. of Dyer Cty.*, 471 U.S. 234, 243 (1985).

As discussed above, the time spent by Plaintiffs' attorneys is detailed in the contemporaneous time records attached to the Oswald Decl. as Exhibit C. As evidenced by those time records, this case was reasonably staffed. The contemporaneous time records fully satisfy the law of this circuit which requires that fee applications be "documented by contemporaneously created time records" that "specify the attorney, the date, the hours expended, and the nature of the work done." *Matusick*, 757 F.3d at 64. The hours claimed are

10

not excessive, redundant, or otherwise unnecessary.  In short, Rupp Baase has acted efficiently and reasonably in prosecuting this lawsuit.

      **C.**    **A Consideration of the *Johnson* Factors Supports the Reasonableness of the Fee Amount Requested.**

In calculating a reasonable hourly rate, the court must also account for the *Johnson* factors.  *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 182 (2d Cir. 2004).  Those variables include the following:

> (1) The time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Anello v. Anderson*, 191 F. Supp. 3d 262, 282 (W.D.N.Y. 2016).

Notably, a primary factor supporting the award of attorneys' fees and costs is the level of success achieved on behalf of the prevailing party:

> Where a plaintiff has obtained excellent results, his attorney should recover a full compensatory fee.  Normally this will encompass all hours reasonable expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).  Here, it cannot be disputed that counsel obtained excellent results for the Plaintiffs.  Thus, Plaintiffs' attorneys are entitled to an award that fully compensates the legal work performed on Plaintiffs' behalf.

Additionally, it has been recognized that civil rights plaintiff work is oftentimes undesirable, and that civil rights plaintiffs' attorneys are economically impacted by their decision to help civil rights litigants.  *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974) ("[c]ivil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant"); *Stokes v. City of Montgomery*, 706 F. Supp. 811, 815 (M.D. Ala. 1988), *aff'd*, 891 F.2d 905 (11th Cir. 1989) ("civil rights litigation . . .  [is] seen as very undesirable because it stigmatizes an attorney as a 'civil rights lawyer' and thus tends to deter fee-paying clients, particularly high-paying commercial clients, from seeking assistance from that lawyer"); *Chalmers v. City of Los Angeles*, 676 F. Supp. 1515, 1524 (C.D. Cal. 1987) (upward adjustment to lodestar was appropriate in case against city to compensate for risk that attorney would be paid almost nothing for work in prosecuting lawsuit); *Gillespie v. Brewer*, 602 F. Supp. 218, 229-230 (N.D.W. Va. 1985) (lodestar adjusted upward in civil rights lawsuit to compensate for undesirability of case); *Jones v. Federated Dept. Stores, Inc.*, 527 F. Supp. 912, 917-18 (D.C. Cir. 1981) (lodestar enhanced due to undesirability of civil rights case and contingency factor). Thus, the 'undesirability of the case' factor weighs in favor of an upward adjustment of Plaintiffs' fee award, as well.

Moreover, it is important to note that this case presented extremely complex legal issues involving the application of new laws from the State regarding arbitrary exemptions granted (or, in this case, not granted) for 'social gatherings' during the COVID-pandemic.  Cases

involving the constitutionality of COVID restrictions from the State is/was a very new area of

civil rights law, requiring a great deal of skill and expertise.  Because this was a "case of first

impression" Plaintiffs' counsel "should be appropriately compensated for accepting the

challenge."  *Johnson*, 488 F.2d at 718.

Another factor that weighs in favor of the fee application is the time limitations

that were imposed.  As this Court is well aware, this case involved several emergency motions,

each of which entailed short deadlines and quick turnarounds.  As a result, it was necessary to

assign several attorneys to the case, as well as to ensure that these attorneys were coordinating

and communicating with each other in order to present well-reasoned, well-organized papers to

the Court.  The coordination and communication among the attorneys was especially necessary

given the complexity of the issues involved, both factual and legal.  Moreover, other than the

initial injunction motion, the stay motions were filed by Defendants, thereby compelling

Plaintiffs to respond.  Of course, the need to draw on several attorneys also precluded several

attorneys from working on other matters.

Lastly, Rupp Baase did not have a working relationship with the Plaintiffs prior to

this matter.  Thus, Rupp Baase had to forge a close relationship with the Plaintiffs to successfully

prosecute their case.  The fact that Plaintiffs were not a prior client of Rupp Baase is another

factor that weighs in favor of a higher fee award.  *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.

Supp. 2d 1185, 1216 (S.D. Fla. 2006) (plaintiffs lack of "track record" with firm favors higher

award).

Therefore, the results of obtained, the undesirability of civil-rights litigation, the complexity of the factual-scientific and legal issues, the time limitations imposed, the preclusion from working on other matters, and the lack of the working relationship with the clients each are *Johnson* factors what weigh heavily in support of granting Plaintiffs' Fee Application.  Also, some of the other *Johnson* factors have been addressed above, including the experience, reputation, ability of counsel, and counsel's customary hourly rates.  (*See* Point II.A, supra).  In sum, a consideration of the *Johnson* factors tips decidedly in favor of Plaintiffs' Fee Application.

## POINT III

### AS THE PREVAILING PARTY, PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT FOR ALL REASONABLE EXPENSES INCURRED

As part of a "reasonable attorneys' fee" under 42 U.S.C. § 1988, prevailing parties are also entitled to an award of "'reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to fee-paying clients.'"  *Reichman v. Bonsignore, Brignati & Mazzota, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *see, e.g., LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (abuse of discretion not to award plaintiff reasonable out-of-pocket costs).  Here, Plaintiffs request only filing-fee, service, and copying expenses.  These costs are the types of expenses that Rupp Baase would normally bill to a paying client.  (Oswald Decl. ¶ 37).  In sum, Plaintiffs seek $916.50 for reimbursable out-of-pocket expenses.  (Oswald Decl. Exhibit C).

## **<u>CONCLUSION</u>**

For all the reasons set forth above, the Court should grant Plaintiffs' Fee

Application in all respects.  It is respectfully submitted that this Court should award $124,280 in

reasonable attorneys' fees to Rupp Baase, together with costs and disbursements of $916.50,

together with such other and further relief as this Court deems just and proper.  Plaintiffs reserve

the right to supplement this application with a request for future additional fees incurred in the

prosecution of this motion.


Dated: April 23, 2021           **RUPP BAASE PFALZGRAF CUNNINGHAM LLC**
                                *Attorneys for Plaintiffs*


                                   *s/Phillip A. Oswald*
                                R. Anthony Rupp III, Esq.
                                Bar Roll # 502559
                                Phillip A. Oswald, Esq.
                                Bar Roll # 519974
                                Michael Brandi, Esq.
                                Bar Roll # 700481
                                25 Walton Street
                                Saratoga Springs, New York 12866
                                (518) 886-1902
                                rupp@ruppbaase.com
                                oswald@ruppbaase.com
                                brandi@ruppbaase.com