UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JENNA M. DiMARTILE; JUSTIN G. CRAWFORD;
PAMELLA GIGLIA; JOE DUROLEK; and
DAVID L. SHAMENDA,

       Plaintiffs,

v.                1:20-CV-0859
                (GTS/CFH)

ANDREW CUOMO; LETITIA JAMES;
 MARK POLONCARZ; EMPIRE STATE
DEVELOPMENT CORP.; and
ERIE COUNTY DEPARTMENT OF HEALTH,

       Defendants.
_____

APPEARANCES:         OF COUNSEL:

RUPP BAASE PFALZGRAF & CUNNINGHAM, LLC  PHILLIP A. OSWALD, ESQ.
 Counsel for Plaintiffs        R. ANTHONY RUPP, III, ESQ.
424 Main Street
1600 Liberty Building
Buffalo, NY 14202-3616

HON. LETITIA A. JAMES       ADRIENNE J. KERWIN, ESQ.
Attorney General for the State of New York   Assistant Attorney General
 Counsel for State Defendants
The Capitol
Albany, NY 12224

HON. MICHAEL A. SIRAGUSA     ERIN E. MOLISANI, ESQ.
Erie County Attorney        Assistant County Attorney
 Counsel for County Defendants
95 Franklin Street, Suite 1634
Buffalo, NY 14202

GLENN T. SUDDABY, Chief United States District Judge

**<u>DECISION and ORDER</u>**

Currently before the Court, in this civil rights action filed by Jenna M. DiMartile, Justin G. Crawford, Pamella Giglia, Joe Durolek, and David Shamenda ("Plaintiffs") against Andrew Cuomo, Letitia James, and Empire State Development Corporation ("State Defendants"), and Mark Poloncarz and Erie County Department of Health ("County Defendants"), is Plaintiffs' motion for attorneys' fees. (Dkt. No. 55.)   For the reasons set forth below, Plaintiffs' motion is denied.

## I.      RELEVANT BACKGROUND

### A.  Plaintiffs' Complaint

Generally, liberally construed, Plaintiffs' Complaint asserted the following five claims: (1) a claim that Defendants' 50-person gathering restriction violates Plaintiffs' First and Fourteenth Amendment rights of free exercise of religion by "forbidding them to preside over or participate in religious weddings according to the dictates of their conscious and religious beliefs"; (2) a claim that the 50-person gathering restriction violates their First and Fourteenth Amendment rights of freedom of speech, assembly, expression and intimate association by forbidding them to gather with their guests for a religious purpose; (3) a claim that the 50-person gathering restriction violates their Fourteenth Amendment rights of equal protection and substantive due process in that it treats religious conduct (i.e., weddings) differently than non-religious conduct (including gatherings for mass demonstrations, graduation ceremonies, special education classes, and restaurant patronage); (4) a claim that Defendants have acted ultra vires in enacting the many restrictions related to COVID-19 pursuant to the Governor's emergency power, including the 50-person gathering restriction; and (5) a claim that Plaintiffs are entitled to relief pursuant to N.Y. C.P.L.R. Article 78 because Defendants' actions are arbitrary, capricious, an abuse of discretion, and a violation of lawful procedure. (Dkt. No. 1 [Pls.' Compl.].)

Familiarity with the factual allegations supporting these claims in Plaintiffs' Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties. (*Id.*)

### B. Relevant Procedural History

On July 31, 2020, Plaintiffs filed their Complaint (Dkt. No. 1) and motion for a temporary restraining order and preliminary injunction (Dkt. No. 4). On August 1, 2020, this Court denied Plaintiffs' motion for a temporary restraining order while reserving decision on Plaintiffs' motion for preliminary injunction pending completion of expedited briefing. (Dkt. No. 5.) On August 5, 2020, the County Defendants filed a motion to dismiss for failure to state a claim and an opposition to Plaintiffs' motion for preliminary injunction. (Dkt. No. 11.) That same day, the State Defendants filed a motion to dismiss for failure to state a claim and lack of personal jurisdiction, and an opposition to Plaintiffs' motion for a preliminary injunction. (Dkt. No. 14.) On August 6, 2020, Plaintiffs filed their responses to both the State and County Defendants' motions. (Dkt. No. 15.) That same day, the County Defendants filed their reply in support of their motion to dismiss and in opposition to Plaintiffs' motion for a preliminary injunction. (Dkt. No. 16.)

On August 7, 2020, the Court held a hearing on Plaintiffs' motion for preliminary injunction. (*See generally* Docket Sheet.) That same day, the Court issued its Decision and Order granting Plaintiffs' motion for preliminary injunction, which enjoined Defendants from enforcing the 50-person limit under Executive Order 202.45 and attendant regulations, guidance, and directives, against Plaintiffs in the operation of their weddings ("the PI Order"). (Dkt. No. 20.)

On August 11, 2020, the State Defendants appealed the PI Order. (Dkt. No. 24.) That same day, the State Defendants filed with this Court their motion for a temporary restraining order for a stay pending appeal. (Dkt. No. 27.) On August 12, 2020, the Court denied the State Defendants' request for an Order to Show Cause and reserved decision on their motion for a stay pending appeal until completion of expedited briefing. (Dkt. No. 28.) On August 17, 2020, Plaintiffs filed their cross-motion for sanctions and an opposition to the State Defendants' motion for a stay pending appeal. (Dkt. No. 31.) On August 18, 2020, the State Defendants filed their reply in support of their motion for a stay pending appeal. (Dkt. No. 32.)

On August 19, 2020, the Court held a hearing on the State Defendants' motion for a stay pending appeal and Plaintiffs' cross-motion for sanctions. (*See generally* Docket Sheet.) That same day, the Court issued its Decision and Order denying the State Defendants' motion for a stay pending appeal and denying Plaintiffs' cross-motion for sanctions. (Dkt. No. 37.)

On August 20, 2020, an administrative stay prohibiting enforcement of the preliminary injunction was granted by the United States Court of Appeals for the Second Circuit. (Dkt. No. 38.) On September 8, 2020, the Second Circuit granted the State Defendants' motion for a stay pending appeal and placed the matter on an expedited briefing calendar. (Dkt. No. 39.)

On February 4, 2021, the Second Circuit dismissed the State Defendants' appeal as moot, vacated the preliminary injunction, and remanded the case to this Court with instructions to dismiss Plaintiffs' claims as moot. (Dkt. No. 41.) On March 25, 2021, after briefing from the Parties, the Court issued an Order approving the Stipulation of Voluntary Dismissal as to Plaintiff David Shamenda. (Dkt. No. 49.) That same day, the Court dismissed as moot the claims asserted by Plaintiffs DiMartile, Crawford, Durolek, and Giglia, pursuant to the Second Circuit's mandate. (Dkt. No. 50.)

4

On April 23, 2021, Plaintiffs filed the current motion for attorneys' fees. (Dkt. No. 55.)[1]
On May 21, 2021, the County Defendants filed their response in opposition to Plaintiffs' motion
for attorneys' fees, and on June 7, 2021, the State Defendants filed their response in opposition
to Plaintiffs' motion. (Dkt. Nos. 56, 62-63.) On June 14, 2021, Plaintiffs filed their reply in
support of their motion for attorneys' fees. (Dkt. No. 64.)

### C.  Parties' Briefing on Plaintiffs' Motion for Attorneys' Fees

#### 1.  Plaintiffs' Memorandum of Law in Support of Their Motion for Fees

Generally, in support of their motion for attorneys' fees, Plaintiffs assert three main
arguments.[2] First, Plaintiffs argue that, as the prevailing party, they are entitled to an award of
attorneys' fees under 42 U.S.C. § 1988. (Dkt. No. 55-3 at 4-7.) Plaintiffs argue that this Court's
decisions granting Plaintiffs' request for a preliminary injunction and its subsequent denial of the
State Defendants' request for a stay of the PI Order addressed the merits of Plaintiffs' claims,
finding that, had the litigation proceeded to final judgment, Plaintiffs likely would have prevailed
on the merits of their claims. (*Id.* at 5-7.) Based on these decisions, Plaintiffs argue the
preliminary injunction materially altered the legal relationship between the parties, and Plaintiffs
therefore meet the definition of a "prevailing party." (*Id.*)

Second, Plaintiffs argue the attorneys' fees they request are reasonable for the following
reasons: (a) the requested hourly rates for Plaintiffs' counsel, which include $395 per hour for
Attorney Rupp, $300 per hour for Attorney Oswald, and $250 per hour for Messrs. Brandi and

---

[1]     Plaintiffs' motion complies with the Court's Order regarding the timeline for requesting
attorneys' fees. (Dkt. No. 53.)

[2]     Plaintiffs are respectfully reminded that, pursuant to the Court's Local Rules of Practice,
all memoranda of law shall contain a table of contents. N.D.N.Y. L.R. 7.1(a)(1).

Davenport, are counsels' customary rates and are reasonable based on the prevailing rates in the Northern District of New York (*id.* at 8-9); (b) the contemporaneous time records kept by Plaintiffs' counsel show they acted efficiently and reasonably with respect to hours spent prosecuting the lawsuit (*id.* at 10-11); and (c) the reasonableness of the fees Plaintiffs request is supported by the factors set forth in *Jonson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974), with specific emphasis placed on the level of success counsel achieved on behalf of Plaintiffs, the undesirable nature of civil rights' work, the complex legal issues arising from the application of new laws related to the COVID-19 pandemic, the time limitations imposed by the nature of motions for preliminary injunctions and other briefing in this case, and the fact that Plaintiffs were not previous clients of Plaintiffs' counsels' law firm (*id.* at 11-14.)

Third, Plaintiffs argue that, as the prevailing party, they are entitled to reimbursement for all reasonable expenses incurred. (*Id.* at 14.) Specifically, Plaintiffs request the costs incurred for filing, copying, and effecting service, as these costs are the types of expenses Plaintiffs' counsel would normally bill to a paying client. (*Id.* at 14-15.)

In total, Plaintiffs request $124,280 in attorneys' fees and $916.50 in costs. (*Id.* at 15.)

### 2. The State Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Attorneys' Fees

Generally, in opposition to Plaintiffs' motion, the State Defendants assert two main arguments. (Dkt. No. 62-5 [State Defs.' Opp'n Mem. of Law].) First, the State Defendants argue that Plaintiffs are not entitled to an award of attorneys' fees because (a) they are not "prevailing parties," and (b) an award of attorneys' fees in this case would be unjust. (*Id.* at 3-8.) More specifically, the State Defendants argue that the specific and unique circumstances of this case determinatively weigh against a finding that Plaintiffs are "prevailing parties." (*Id.* at 5.) The State Defendants highlight the fact that Plaintiffs DiMartile and Crawford benefitted from the

short-lived injunctive relief only because the PI Order was issued within hours of their wedding and the State Defendants could not seek timely appellate review. (*Id.* at 6.) Thereafter, the State Defendants obtained a stay of the preliminary injunction from the Second Circuit Court of Appeals, and Plaintiffs Giglia and Durolek indefinitely postponed their wedding, making the preliminary injunction and the entire litigation moot. (*Id.*) Based on these circumstances, the State Defendants argue that, but for the timing of Plaintiffs' motion and the Court's PI Order, Plaintiffs DiMartile and Crawford would not have benefitted from the PI Order and Plaintiffs would have failed to succeed on any claims. (*Id.* at 6-7.) The State Defendants argue that Plaintiffs cannot be "prevailing parties" permitted to collect attorneys' fees when the Second Circuit disagreed with the issuance of the preliminary order. (*Id.*)

The State Defendants further argue that, should the Court determine Plaintiffs are "prevailing parties," it should decline to award attorneys' fees because the circumstances of the case make an award of fees unjust. (*Id.* at 7-8.) Specifically, the State Defendants argue that an award of attorneys' fees would constitute a windfall that the Court should not permit because Plaintiffs DiMartile and Crawford only benefitted from the PI Order for a few hours, the other Plaintiffs never benefitted from the PI Order, and the PI Order only remained enforceable for thirteen days. (*Id.*)

Second, the State Defendants argue that, even if Plaintiffs are entitled to an award of attorneys' fees, the Court should reduce the amount sought because both the hourly rate charged by Plaintiffs' counsel and the hours claimed are excessive and unreasonable. (*Id.* at 8-20.) As support for their second argument, the State Defendants argue that the Court should deny Plaintiffs' motion because their submissions fail to provide any real information about the experience of Plaintiffs' four attorneys, or that, alternatively, the Court should reduce the hourly

rate Plaintiffs' counsel seeks by comparing each attorneys' years of experience to hourly rates approved by the Northern District of New York. (*Id.* at 9-14.) The State Defendants propose that Plaintiffs' counsels' work should be compensated in the following way: Attorney Rupp, $250 per hour; Attorney Oswald, $200 per hour; Attorney Brandi, $250 per hour; Attorney Davenport, $150 per hour; and no award for unidentified timekeepers on Plaintiffs' records. (*Id.*)

The State Defendants also argue that the hours Plaintiff's counsel claims are excessive for the following reasons: (a) Plaintiffs' counsel spent time on unnecessary and unsuccessful tasks, including attempts to intervene in another case, discussions regarding seeking sanctions against State Defendants, and attempts to defend an appeal of the Court's PI Order when no Plaintiffs remained who sought to get married under the Order (*id.* at 17-18); (b) Plaintiffs' time entries in support of their motion include block-billing, making it difficult or impossible to determine the reasonableness of the time spent on each part of the block-billed entries (*id.* at 18-19); (c) Plaintiffs impermissibly seek compensation for clerical or paralegal work performed by attorneys (*id.* at 19); (d) Plaintiffs did not offset their request for fees by the amount raised by Arrowhead Golf Club's ("Arrowhead") GoFundMe (i.e., $8,665) to cover the legal costs associated with lawsuits, including this one, or that Arrowhead invested in the lawsuit (i.e., $40,000) (*id.* at 19-20); and (e) when splitting the litigation into four phases (i.e., the pre-litigation phase, the PI phase, the post-PI phase, and the fee application phase), the hours Plaintiffs' counsel accumulated were excessive (*id.* at 20-25). With respect to the State Defendants' contention that the hours accumulated in each phase were excessive, the State Defendants argue that the Court should not award attorneys' fees for the post-PI phase of the

litigation because Plaintiffs were unsuccessful in that phase[3] and ask the Court to reduce the fees

requested in the other phases where the time entries are confusing, duplicative, or show

excessive time spent researching and communicating with others. (*Id.* at 21-25.) The State

Defendants do not contest the entries for the following times: (a) the time spent reviewing

Defendants' papers in opposition to Plaintiffs' motion for a preliminary injunction and cross-

motions to dismiss and responding to those submissions; (b) the time spent preparing for, and

conducting, oral argument; and (c) the time spent applying for attorneys' fees in this case. (*Id.* at

21-23.) Finally, the State Defendants argue the Court should not award attorneys' fees to the

extent that the time records indicate work done for the wedding venue, Arrowhead Golf Club

("Arrowhead"), or work that appears to have nothing to do with this specific case. (*Id.* at 14-15.)

>           **3.      The County Defendants' Memorandum of Law in Opposition to
>                     Plaintiffs' Motion for Attorneys' Fees**

Generally, in opposition to Plaintiffs' motion, the County Defendants adopt the State

Defendants' arguments regarding Plaintiffs' entitlement to, and the reasonableness of, the

requested attorneys' fees. (Dkt. No. 56-1 at 2-3 [County Defs.' Opp'n Mem. of Law].)

Additionally, the County Defendants argue that, even if the Court awards attorneys' fees to

---

[3]      In the alternative, the State Defendants argue that time Plaintiffs' counsel spent in the
post-PI phase are not compensable for the following reasons: "the time spent researching and
drafting in connection with opposing State Defendants' motion for a stay in the Second Circuit
was excessive, since it was largely duplicative of Plaintiffs' opposition motion for a stay in the
District Court"; "the time spent researching and drafting in connection with Plaintiffs' appellate
brief was excessive, since Plaintiffs made largely the same arguments as they made in
connection with their motion for preliminary injunction and in opposition to the stay
applications"; "the time spent researching mootness, and its implications, was excessive"; "the
time spent researching fruitless things like whether the Defendants defaulted while their motions
to dismiss were pending … and whether a judge on the Second Circuit can issue an
administrative stay … should be excluded"; and "the applications for costs by both Plaintiffs and
the State Defendants were denied by the Second Circuit." (Dkt. No. 62-5 at 24-25.)

Plaintiffs, the Court should allocate the fees entirely to the State Defendants because the County Defendants are merely the local presence charged with enforcing the State's guidelines. (*Id.* at 4-5.) Because the County Defendants did not have any input in the creation of the terms of or the enforcement of the State's Executive Orders and Plaintiffs' time records show they spent the majority of their time litigating the State Defendants, the County Defendants argue the Court should deny Plaintiffs' request for attorneys' fees as to the County Defendants, or, alternatively, assess 5% of the fees accrued prior to August 11, 2020, to the County Defendants and only 0.6 hours after August 11, 2020, based on Plaintiffs' time records. (*Id.* at 5-6.)

### 4.    Plaintiffs' Reply Memorandum of Law

Generally, in reply to the responses filed by Defendants, Plaintiffs assert four arguments.[4] (Dkt. No. 64-2 [Pls.' Reply Mem. of Law].) First, Plaintiffs restate their argument that they qualify as "prevailing parties" under 42 U.S.C. § 1988, and they argue that Defendants' arguments to the contrary rest on incorrect interpretations of the relevant case law and its application to the facts of this case. (*Id.* at 1-4.)

Second, Plaintiffs argue they engaged in necessary and successful work. (*Id.* at 4-6.) More specifically, Plaintiffs argue that their requested fees are not for duplicative work or overstaffing, because it is not uncommon for multiple attorneys to collaborate on a case like this one, which included tight deadlines, which was a case of first impression with a highly deferential standard to Defendants, and in which much of Plaintiffs' time was spent responding to Defendants' attempts to overturn the PI Order. (*Id.* at 4-5.) Plaintiffs argue the Court should

---

[4]    Plaintiffs' reply brief does not address the County Defendants' argument that, should the Court award attorneys' fees, the Court should allocate the fees entirely to the State Defendants. (Dkt. No. 56-1 at 4-5.)

not reduce the requested amount for tasks that the Defendants believe were "unsuccessful," because the focus is whether, at the time counsel performed the work, a reasonable attorney would have engaged in similar time expenditures. (*Id.*) Plaintiffs also argue that the Court should not disallow fees related to communications and interaction with the media, because this work was "directly and intimately related" to successful representation of Plaintiffs due to the State Defendants' statements to the media. (*Id.* at 6.)

Third, Plaintiffs argue that their billing records are adequate. (*Id.*) Plaintiffs argue that the Defendants' "line-by-line" analysis of Plaintiffs' time records is unrealistic and that these records need not be significantly detailed, so long as they identify the general subject matter of the time expenditures. (*Id.* at 7.) Plaintiffs also argue that block billing is not forbidden where, as here, the hours billed were not independently unreasonable and Plaintiffs did not combine tasks that were not compensable. (*Id.*) Plaintiffs argue that a comparison of this case to another COVID-19 related litigation in California shows the Court need not reduce Plaintiffs' requested fees. (*Id.* at 8.)

Fourth, Plaintiffs argue that the hourly rates sought are reasonable. (*Id.* at 8-10.) Plaintiffs argue that, while the Court may look to rates awarded in other cases to determine the prevailing market rate, it must also give weight to credible evidence submitted by Plaintiffs' counsel, which includes customary rates counsel normally charges and testimony from John Barone, Esq., in support of the requested rates. (*Id.* at 9.) Plaintiffs also argue the rates sought by their counsel for work by Attorneys Rupp and Oswald are consistent with rates recently granted in the Northern District of New York, including by this Court. (*Id.* at 9-10.) Plaintiffs ask that the Court reassess its rates awarded for associate attorneys and argues that the *Johnson* factors support an upward

11

adjustment of the fee award to fully compensate the legal work performed by Plaintiffs' counsel in this case. (*Id.* at 10.)

## II.    RELEVANT LEGAL STANDARD

Fed. R. Civ. P. 54(d) confers on federal courts the ability to award attorneys' fees to the prevailing party when directed by federal statute or the civil rules.  Fed. R. Civ. P. 54(d). Pursuant to 42 U.S.C. § 1988, "[i]n any action or proceeding to enforce a provision of [42 U.S.C. § 1983] …, the court, in its discretion, may allow the prevailing party … a reasonable attorneys' fee as part of the costs." "Under Section 1988, there is a two-part test for determining whether a party is entitled to receive reasonable attorneys' fees." *Hines v. City of Albany*, 06-CV-1517, 2014 WL 12613275, at *2 (N.D.N.Y. June 5, 2014) (Suddaby, C.J.). "First, the party seeking attorneys' fees must be a 'prevailing party.' A party is considered a 'prevailing party' if 'actual relief on the merits of his claim materially alters the legal relationship between the parties.'" *Hines*, 2014 WL 12613275, at *2 (quoting *Farrar v. Hobby*, 506 U.S. 103, 109, 113 S.Ct. 566, 567 (1992) and *Rivera v. Horton*, 7 F.Supp.2d 147, 149 (N.D.N.Y. 1998)); *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996).

Second, assuming determination of "prevailing party" status, "the party seeking attorneys' fees must prove that his requested fee is 'reasonable.'" *Id.* at *2 (quoting *Pino*, 101 F.3d at 237). In determining whether the moving party has satisfied its burden, the court must calculate a "presumptively reasonable fee." *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011). Traditionally, courts have determined a "reasonable attorneys' fee" by calculating the lodestar—the product of the number of hours required by the matter and a reasonable hourly rate. *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011), *superseded on other grounds as recognized in Acker v. Gen.*

*Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017) (citing *Perdue v. Kenny A. ex rel. Winn*, 559

U.S. 542, 553, 130 S. Ct. 1662, 1673 (2010)); *Arbor Hill Concerned Citizens Neighborhood*

*Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008). A reasonable hourly rate is "what a

reasonable, paying client would be willing to pay, given that such a party wishes to spend the

minimum necessary to litigate the case effectively."[5] *Bergerson*, 652 F.3d at 289-290 (internal

citations and quotation marks omitted). The court must refer to the "prevailing [market rates] in

the [relevant] community for similar services by lawyers of reasonably comparable skill,

experience, and reputation." *Farbotko v. Clinton Cnty. of N.Y.*, 433 F.3d 204, 208 (2d Cir. 2005)

(quoting *Blum v. Stevenson*, 465 U.S. 886, 895, n. 11, 104 S.Ct. 1541 (1984)). A determination

of the reasonable hourly rate "contemplates a case-specific inquiry into the prevailing market

rates for counsel of similar experience and skill to the fee applicant's counsel[, which] may, of

course, include judicial notice of the rates awarded in prior cases and the court's own familiarity

with the rates prevailing in the district." *Farbotko*, 433 F.3d at 209.

---

[5]     To determine a reasonable hourly rate, courts additionally use the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the level of skill required to perform the legal
> service properly; (4) the preclusion of employment by the attorney
> due to acceptance of the case; (5) the attorneys' customary hourly
> rate; (6) whether the fee is fixed or contingent; (7) the time
> limitations imposed by the client or the circumstances; (8) the
> amount involved in the case and the results obtained; (9) the
> experience, reputation, and ability of the attorneys; (10) the
> 'undesirability' of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar
> cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 186, n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-179 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989)).

The reasonable amount of time spent on a matter depends in part on the degree of difficulty of the factual and legal issues involved. *Hofler v. Family of Woodstock, Inc.,* 07-CV-1055, 2012 WL 527668, at *5 (N.D.N.Y. Feb. 17, 2012) (McAvoy, J.). Courts may reduce from the lodestar calculation hours that are "excessive, redundant, or otherwise unnecessary" and consequently are not reasonable. *Hofler*, 2012 WL 527668, at *5 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).  In considering the number of reasonably expended hours, the court "has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Hensley*, 461 U.S. at 434; *see also Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *N.Y. Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983)). The court should also consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted).

Because Plaintiffs here seek their attorneys' fees, they "bear the burden of documenting the hours reasonably expended and the reasonable hourly rates." *Zhou v. State Univ. of N.Y. Inst. of Tech.*, 08-CV-0444, 2014 WL 7346035, at *3 (N.D.N.Y. Dec. 23, 2014) (Suddaby, C.J.) (citing *Hensley*, 461 U.S. at 437). To demonstrate that a fee request is reasonable, "a party seeking an attorneys' fees award 'must support that request with contemporaneous time records that show, for each attorney, the date, the hours expended, and the nature of the work done.'" *Kingvision Pay-Per-View, Ltd. v. Castillo Rest. Corp.*, 06-CV-0617, 2007 WL 841804, at *6 (E.D.N.Y. Jan. 16, 2007) (quoting *Cablevision Sys. N.Y.C. Corp. v. Diaz*, 01-CV-4340, 2002 WL 31045855, at *5 (S.D.N.Y. July 10, 2002)).

## III.    ANALYSIS

### A.    Whether Plaintiffs Are "Prevailing Parties" Entitled to Attorneys' Fees

After carefully considering the matter, the Court answers the question in the negative for the reasons stated in the State Defendants' memorandum of law. (Dkt. No. 62-5.) To those reasons, the Court adds the following analysis.

Under Second Circuit precedent, a party may be entitled to an award of attorneys' fees under 42 U.S.C. § 1988 where the party received a stay or preliminary injunction. *Haley v. Pataki*, 106 F.3d 478, 483 (2d Cir. 1997) ("When a party receives a stay or preliminary injunction but never obtains a final judgment, attorneys' fees are proper if the court's action in granting the preliminary injunction is governed by its assessment of the merits."). However, the United States Supreme Court in *Sole v. Wyner* made clear that "[p]revailing party status . . . does not attend achievement of a preliminary injunction that is reversed, dissolved, or otherwise undone by the final decision in the same case." 551 U.S. 74, 83 (2007). In denying the *Sole* plaintiff's motion for attorneys' fees, the Supreme Court stated that "the eventual ruling on the merits for defendants" was "[o]f controlling importance to [its] decision . . . ." *Sole*, 551 U.S. at 84-85.

In support of their motion for attorneys' fees, Plaintiffs argue that they are a "prevailing party" because this Court granted Plaintiffs' motion for a preliminary injunction and subsequently denied the State Defendants' motion for a stay of the injunction pending appeal. (Dkt. No. 55-3 at 4-6.) Plaintiffs highlight the fact that, in making these determinations, this Court held that Plaintiffs showed a "strong likelihood of success on the merits . . . ." (*Id.*)

The more important decision at issue, however, is the Second Circuit's grant of the State Defendants' motion to stay the preliminary injunction pending appeal. On August 11, 2020, the State Defendants appealed the PI Order. (Dkt. No. 24.) That same day, the State Defendants filed with this Court their motion for a stay of the preliminary injunction pending appeal. (Dkt. No.

27.) On August 19, 2020, this Court denied that motion. (Dkt. No. 37.) However, the Second Circuit administratively stayed enforcement of the preliminary injunction on August 20, 2020, and on September 8, 2020, a panel of the Second Circuit granted the State Defendants' motion for a stay of the preliminary injunction pending appeal. (Dkt. Nos. 38-39.) Thereafter, the Second Circuit dismissed the State Defendants' appeal as moot, vacated the preliminary injunction, and remanded the case to this Court with instructions to dismiss Plaintiffs' claims. (Dkt. No. 41.)

Plaintiffs' reliance on the Second Circuit's eventual dismissal of the appeal overlooks the implications of the Second Circuit's stay of the preliminary injunction. In granting the State Defendants' motion for a stay pending appeal, the Second Circuit enjoined enforcement of the preliminary injunction on which Plaintiffs now rely to obtain attorneys' fees. (*Id.*) Plaintiffs attempt to lessen the impact of the stay by arguing that, in granting the stay, the Second Circuit did not "consider the merits of Plaintiffs' claims, nor did it reject this Court's reasoning in granting Plaintiffs' request for a preliminary injunction." (Dkt. No. 55-3 at 5, n. 2.) This argument neglects the factors courts assess when imposing a stay pending appeal, which include the following: "(1) *whether the stay applicant has made a strong showing that he is likely to succeed on the merits*; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (emphasis added); *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167 (2007). The Second Circuit recently emphasized that "[t]he first two factors are the most critical . . . ." *Unif. Fire Officers Ass'n v. de Blasio*, 973 F.3d 41, 48 (2d Cir. 2020).

Based on these factors, the Second Circuit would have assessed whether the State Defendants made a "strong showing that [they were] likely to succeed on the merits" when granting the State Defendants' motion for a stay pending appeal. The Second Circuit accordingly made a determination on the merits, meaning the preliminary injunction was "reversed, dissolved, or otherwise undone" by the Second Circuit's imposition of the stay pending appeal. *Sole*, 551 U.S. at 84-85; *see Doe v. Nixon*, 716 F.3d 1041, 1049 (8th Cir. 2013) ("Although the . . . preliminary injunction may have served as a court-ordered change in the parties' legal relationship, this change was never realized because of our stay of that order. Thus, the district court's order effectively served as a judicial pronouncement without judicial relief and did not confer prevailing party status upon the [plaintiffs].").

Plaintiffs' cited cases do not change this analysis. Plaintiffs rely on *Haley v. Pataki*, 106 F.3d 478 (2d Cir. 1997) and *Kirk v. N.Y. State Dep't of Educ.*, 644 F.3d 134 (2d Cir. 2011) as support for their argument that they are "prevailing parties" entitled to attorneys' fees. However, in neither *Haley* nor *Kirk* did the Second Circuit grant a stay of the preliminary injunction pending appeal—a fact of consequence in this case. In *Haley*, the district court granted plaintiffs' motion for preliminary injunction, which the defendants then appealed. 106 F.3d at 480-81. The Second Circuit, however, *denied* the defendants' request for a stay pending appeal, requiring the defendants to comply with the preliminary injunction. *Id.* at 481. In *Kirk*, the defendants did not seek a stay pending appeal from the Second Circuit; rather, after the district court granted a preliminary injunction to the plaintiff, the defendants sought a stay pending appeal from the district court, which the court subsequently denied. 644 F.3d at 136. Accordingly, although *Haley* and *Kirk* provide guidance on awarding attorneys' fees in certain circumstances where a

17

party obtains a preliminary injunction, they do not address the impact of the Second Circuit's stay of the preliminary injunction pending appeal.

The Court recognizes that, because of its grant of a preliminary injunction, Plaintiffs DiMartile and Crawford held their wedding ceremony without enforcement of the disputed executive order.[6] (Dkt. No. 55-3 at 7.) This seeming success on Plaintiffs' claims, however, occurred due to this Court's grant of the PI Order mere hours before the DiMartile/Crawford wedding ceremony, leaving the State Defendants no chance to appeal or seek a stay of the preliminary injunction from either this Court or the Second Circuit prior to the ceremony. Given that the Second Circuit did ultimately grant the State Defendants' motion for a stay pending appeal less than two weeks after the DiMartile/Crawford wedding, Plaintiffs only success in the lawsuit arose from the unique timing at issue in this case. But for the timing of Plaintiffs' motion for preliminary injunction and the Court's PI Order, Plaintiffs would have left the court "empty handed" with no claims of success.[7]

Simply stated, due to the timing of the PI Order in relation to the DiMartile/Crawford wedding and the Second Circuit's grant of a stay pending appeal merely thirteen days after, the

---

[6]     Plaintiffs DiMartile and Crawford were the only plaintiffs who received the benefit of the preliminary injunction, because the Second Circuit granted the administrative stay pending appeal two days prior to the scheduled wedding of Plaintiffs Giglia and Durolek. Plaintiffs Giglia and Durolek postponed their wedding indefinitely after the Second Circuit imposed the stay. (Dkt. No. 64-2 at 1, n. 1 [highlighting that Plaintiffs Giglia and Durolek postponed their wedding "after having their wedding plans ripped away by the Second Circuit's eleventh-hour administrative stay"]).

[7]     *See Kirk*, 644 F.3d at 138-39 (highlighting the importance of the plaintiff not "leav[ing] the court empty handed" when finding the plaintiff was a "prevailing party"); *Doe*, 716 F.3d at 1049 ("In effect then, the stay of the preliminary injunction [on October 31, 2008], which expired of its own terms on November 1, 2008, resulted in the Does leaving the courthouse emptyhanded, their initial success having been undone without a change in the parties' legal relationship.").

Court is not persuaded that enforcement of the PI Order at the time of the DiMartile/Crawford wedding bestowed "prevailing party" status on Plaintiffs for purposes of an award of attorneys' fees. *See Sole*, 551 U.S. at 84 (highlighting the fact that "[t]he provisional relief immediately granted expired before appellate review could be gained, and the court's threshold ruling would have no preclusive effect in the continuing litigation"). Rather, awarding attorneys' fees for Plaintiffs' "fleeting success" in this case falls in line with what the Supreme Court cautioned against in *Sole*. *Id.* at 83.

Therefore, based on the specific facts and procedural history in this case, the Court finds Plaintiffs are not "prevailing parties" entitled to attorneys' fees under 42 U.S.C. § 1988.

B.      **Whether the Requested Attorney's Fees are Reasonable**

Because the Court has already found that an adequate ground exists upon which to base a denial of Plaintiffs' motion, the Court need not (and does not) render any finding regarding whether those fees are reasonable.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiffs' motion for an award of attorneys' fees (Dkt. No. 55) is **<u>DENIED</u>**.

Date:   November 2, 2021
        Syracuse, New York

Glenn T. Suddaby
Chief U.S. District Judge

19